IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:10-cr-00389-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    WALTER EDMUND BOND,
        a/k/a "Lone Wolf,"

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Gregory Holloway, Assistant United States Attorney for the District of Colorado, and the defendant, WALTER EDMUND BOND, a/k/a "Lone Wolf", personally and by counsel, Edward R. Harris, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing, pursuant to D.C.Colo.LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to the Indictment charging him in Count 1 with Use of Fire or Explosives to Damage and Destroy Property in Interstate Commerce in violation of 18 U.S.C. § 844(i); and, in Count 2 with Force, Violence and Threats Involving an Animal Enterprise in violation of 18 U.S.C. § 43.



The government agrees that a three-point reduction in the offense level for acceptance of responsibility is appropriate pursuant to United States Sentencing Commission, Guidelines Manual, § 3E1.1(a) and (b).

## II. ELEMENTS OF THE OFFENSES

**Count 1:**

In order to establish a violation of 18 U.S.C. § 844(i) as charged in count 1, the government would need to prove that:

a) The defendant did maliciously damage and destroy a building and other real and personal property by means of fire; and

b) the building and other real and personal property the defendant damaged and destroyed were items used in interstate commerce.

**Count 2:**

In order to establish a violation of 18 U.S.C. § 43 as charged in count 2, the government would need to prove that:

a) The defendant did travel in, use, and cause to be used a facility of interstate commerce;

b) The defendant did so for the purpose of damaging and interfering with the operations of an animal enterprise;

c) In connection with such purpose, the defendant did intentionally damage and cause the loss of real and personal property used by an animal enterprise; and

d) The amount of the economic damage resulting from the defendant's acts exceeded $100,000.

## III. STATUTORY PENALTIES

**Count 1:**

The statutory penalties for count 1 charging a violation of 18 U.S.C. § 844(i) are not less than 5 years imprisonment, but not more than 20 years imprisonment; not more than a $250,000 fine, or both; not more than 5 years supervised release; $100.00 special assessment fee; and restitution if applicable.

**Count 2:**

The statutory penalty for count 2 charging a violation of 18 U.S.C. § 43 is not more than 10 years imprisonment; not more than a $250,000 fine, or both; not more than 3 years supervised release; $100.00 special assessment fee; and restitution if applicable.

**For all counts of conviction:**

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV.  STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties believe are relevant, pursuant to § 1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§ 6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the advisory guideline computation (§ 1B1.3) or to sentencing in general (§ 1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the pre-sentence investigation, and any other relevant information." (§ 6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which the conduct relevant to the offense (§ 1B1.3) began is April of 2010. The conduct occurred in the State and District of Colorado and elsewhere:

The government submits that the evidence is:

On or about April 30, 2010 at about 3:30 a.m., a fire occurred at the Sheepskin Factory located at 510 South Colorado Boulevard in Glendale, Colorado. The Sheepskin Factory is a commercial retail business that uses and sells animal products for profit. The business sold items both via the internet and directly to the public through the store front - specifically seat covers, shoes, rugs and blankets. It is an animal enterprise business engaged in interstate commerce. The fire entirely destroyed the building and its contents, resulting in approximately $500,000 in damages.

Investigators at the scene determined the fire was incendiary and had been intentionally set. Investigators found that a window had been broken and an accelerant was used to start the fire. Video footage from a business next to the Sheepskin Factory showed a person wearing a dark, long sleeve hooded shirt and carrying a dark colored backpack walking toward the Sheepskin Factory right before the fire was set. The general height and weight of the person appears to match that of the defendant.

After the fire, the defendant posted a message taking responsibility for the Sheepskin Factory fire and another fire in Utah on the web site "www.voiceofthevoiceless.org." The message said, "The arson at the Sheepskin Factory in Denver was done in defense and retaliation for all the innocent animals that have died cruelly at the hands of human oppressors. Be warned that making a living from the use and abuse of animals will not be tolerated. Also be warned that leather is every bit as evil as fur. As demonstrated in my

recent arson against the Leather Factory in Salt Lake City. Go vegan! ALF Lone Wolf."

The defendant later contacted an old acquaintance. When the acquaintance asked the defendant what he'd been up to, the defendant told him to go look at the web site and scroll down to the part about the Sheepskin Factory fire and that was what "he'd been up to." The acquaintance reported this information to law enforcement authorities. The defendant later traveled from Salt Lake City to Denver to meet with the acquaintance. Agents recorded this contact. The defendant explained that he had burned the Sheepskin Factory in Denver as well as two other places in Utah. The defendant said he used the nickname "Lone Wolf" and the businesses he burned represented animals **that** wolves typically hunt. The defendant went on to say that at one time he lived near the Sheepskin Factory and that it angered him that the business profited from animals. The defendant said that he broke into the Sheepskin Factory through the back door to light the fire. The defendant said the building was a "box of matches" and he felt it would easily burn. The defendant explained that after he set the fire, he noted fire trucks responding.

Before the fire, the defendant used his phone – a facility of interstate commerce – to facilitate the Sheepskin Factory arson. The defendant specifically traveled into Colorado, using his phone to coordinate the logistics and communication of his purpose to damage and interfere with the operations of the Sheepskin Factory. The defendant explained that he used a stolen library card to access the internet and communicated via web sites, sending his information to a party in Florida to have it posted.

When agents arrested the defendant, he had a dark colored backpack with him. In a search of that backpack, agents found a book entitled "The Declaration of War – Killing People to Save the Animals and the Environment – Strike a Match... Light a Fuse... We've Only Got the Earth to Lose..."

Defendant agrees with the foregoing summary of the evidence with three exceptions:

(1) defendant denies that he posted any message about the Utah fire(s);

(2) defendant admits telling an acquaintance to look up the Sheepskin Factory arson on the web, but denies directing that person to a specific website; and

(3) defendant admits accessing the internet but denies both communicating via web sites and posting information via third parties.

## V. SENTENCING COMPUTATION

The parties understand that the court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the court is not bound by any position of the parties. (§ 6B1.4(d)) The court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the pre-sentence investigation, and any other relevant information. (§ 6B1.4 Comm.; § 1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§ 6B1.4(b)).

  A. The base guideline for Count 1 is § 2K1.4(a)(1), with a base offense level of 24. The base guideline for Count 2 is § 2B1.1(a)(2) with a base offense level of 6.

  B. There are no specific offense characteristics for Count 1. The following specific offense characteristics apply to Count 2:

    1. There is a 14 level increase pursuant to § 2B1.1(b)(1)(H) because the loss exceeds $400,000.

    2. There is a 2 level increase pursuant to § 2B1.1(b)(13)(A) because the offense resulted in a conscious or reckless risk of death or serious bodily injury.

    3. Because the offense involved arson, the arson calculation applies for Count 2 pursuant to § 2B1.1(c)(2).

  C. There are no victim related, role in offense, obstruction related, or multiple count adjustments. The Counts group pursuant to § 3D1.2.

  D. The adjusted offense level would therefore be 24.

  E. The defendant should receive a 3 level adjustment for acceptance of responsibility. The resulting offense level would therefore be 21.

  F. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court. Known facts regarding the applicable criminal history are as follows:

    1. Three points for the July 10, 1996 conviction for Criminal Mischief Third Degree and Trespass - Injury/Damage out of Cerro Gordo County, Iowa.

2. Three points for the November 7, 1997 conviction for Arson Second Degree out of Cerro Gordo County, Iowa.

Based on that information, if no other information were discovered, the defendant's criminal history category would be III.

G. Assuming the (tentative) criminal history facts of (F) above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H. The guideline range resulting from the estimated offense level of 21 above, and the (tentative) criminal history category of III above, is 46-57 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level 21 above could conceivably result in a range from 37 months (bottom of Category I), to 96 months (top of Category VI).

However, pursuant to the mandatory minimum prescribed by statute for a violation of 18 U.S.C. § 844(i), the defendant must be sentenced to not less than 60 months.

I. Pursuant to guideline § 5E1.2, assuming the estimated offense level of 21 above, the fine range for this offense would be $7,500 to $75,000, plus applicable interest and penalties.

J. Pursuant to guideline § 5D1.2, if the Court imposes the term of supervised release, that term shall be not less than 3 years and not more than 5 years.

K. Restitution is to be determined.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 11/18/10

WALTER EDMUND BOND
Defendant

Date: 11/18/10

EDWARD R. HARRIS
Attorney for Defendant

Date: 11/18/2010

GREGORY A. HOLLOWAY, WSBA #28743
Assistant U.S. Attorney