**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 10-cr-00389-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**WALTER EDMUND BOND,**

**Defendant.**

_____

**REPORTER'S TRANSCRIPT**
**(Sentencing Hearing)**
_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 1:30 p.m. on the 11th
day of February, 2011, Alfred A. Arraj United States
Courthouse, Denver, Colorado.


**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
GREGORY J. HOLLOWAY, Assistant United States Attorney,
1225 17th Street, Suite 700, Denver, CO 80202

**FOR THE DEFENDANT:**
EDWARD R. HARRIS, Office of the Federal Public Defender,
633 17th St., Suite 1000, Denver, CO 80202

1                          **FEBRUARY 11, 2011**

2              (Proceedings commence at 1:30 p.m.)

3              THE COURT:  You may be seated.

4              Court calls Criminal Case No. 10-cr-00389,

5    encaptioned United States of America v. Walter Edmund

6    Bond.

7              Counsel, would you enter your appearances?

8              MR. HOLLOWAY:  Afternoon, Your Honor, Greg

9    Holloway, Assistant United States Attorney, on behalf of

10   the United States of America.

11             THE COURT:  Good afternoon.

12             MR. HARRIS:  Good afternoon, Your Honor, Edward

13   Harris appearing on behalf of Mr. Bond.  For the record,

14   Mr. Bond is present, seated to my immediate right.

15             THE COURT:  Good afternoon.

16             THE DEFENDANT:  Good afternoon.

17             THE COURT:  All right.  For the record, the Court

18   notes that Mr. Grant Hanson, representing the United

19   States Probation Office, is in attendance at this hearing.

20   Good afternoon.

21             PROBATION OFFICER:  Good afternoon, Your Honor.

22             THE COURT:  Mr. Harris, would you and Mr. Bond

23   please approach the lectern.

24             Mr. Bond, the record shows that you were charged by

25   Indictment dated July 27, 2010, with one count charging

1   violation of 18 United States Code Section 844(i); use of

2   fire or explosives to damage and destroy property, and one

3   count of violation of 18 United States Code Section 43;

4   use of force, violence and threats involving an animal

5   enterprise.

6        The record also shows on November 18, 2010,

7   pursuant to a plea agreement, you entered a plea of guilty

8   to and were convicted of both of those counts; is that

9   correct?

10       THE DEFENDANT:  That is, Your Honor.

11       THE COURT:  All right.  We are here this afternoon

12   for sentencing.

13       Counsel, I have received and reviewed the full

14   presentence investigation report dated January 3, 2011,

15   including all addenda.  I have also reviewed Document Nos.

16   20 and 21, the defendant's sentencing statement and motion

17   to amend the sentencing statement.  And Document 22, the

18   Government's motion for a 3-level decrease for acceptance

19   of responsibility.  In addition, I have reviewed more than

20   50 letters that have been submitted in this case.

21       Other than that, are there any documents that I

22   have failed to review that I should have reviewed for this

23   hearing?

24       MR. HOLLOWAY:  No, Your Honor.

25       MR. HARRIS:  No, Your Honor.

1          THE COURT:  All right.  Mr. Harris, have you had

2    enough time to read the presentence report and to review

3    it with your client?

4          MR. HARRIS:  I have, Your Honor.

5          THE COURT:  Did you explain the contents of that

6    report to him?

7          MR. HARRIS:  Yes.

8          THE COURT:  Do you have any concerns about

9    Mr. Bond's ability to understand that report?

10          MR. HARRIS:  No concerns, Your Honor.

11          THE COURT:  Mr. Bond, did you get a copy of the

12    presentence investigation report?

13          THE DEFENDANT:  I did.

14          THE COURT:  Did you read it?

15          THE DEFENDANT:  I did.

16          THE COURT:  Do you need any more time to review it?

17          THE DEFENDANT:  No, I don't.

18          THE COURT:  Did Mr. Harris explain the contents of

19    that report to you?

20          THE DEFENDANT:  He did.

21          THE COURT:  Do you believe you understand the

22    contents of that report?

23          THE DEFENDANT:  I do.

24          THE COURT:  All right.  I note that the probation

25    office has modified the presentence investigation report

1    to reflect that the statutory mandatory minimum sentence

2    for Count 1 is 60 months.  Other than that change, there

3    were no other objections to the report.

4         Mr. Harris and Mr. Holloway, do either of you wish

5    to challenge the factual contents or the guideline

6    calculation in the presentence report?

7         MR. HOLLOWAY:  No, Your Honor.

8         MR. HARRIS:  No, Your Honor.

9         THE COURT:  Mr. Bond, do you wish to make any

10   objection to the factual contents or the guideline

11   calculation contained in the presentence report?

12        THE DEFENDANT:  No, Your Honor.

13        THE COURT:  All right.  The Government has filed a

14   motion pursuant to United States Sentencing Guideline

15   3E1.1(b) requesting that this Court grant the defendant a

16   full 3-level decrease in the offense level for acceptance

17   of responsibility.  That motion, Document No. 22, is

18   granted.

19        The total offense level in this case is 21, and the

20   defendant's criminal history category is III, which

21   results in an advisory guideline range of 46 to 57 months.

22   However, because the mandatory minimum sentence as to

23   Count 1 is greater than the top of the applicable

24   guideline range, the statutorily required minimum sentence

25   becomes 60 months.  The supervised release range is 2 to 3

1    years.

2         As part of my protocol for determining whether the

3    guideline range has recommended a sentencing range that is

4    sufficient but not greater than necessary to achieve the

5    objectives set forth at 18 United States Code Section

6    3553, I have reviewed the entire presentence report and

7    considered the sentencing guidelines, as well as the 3553

8    factors.  I have also reviewed, as I indicated previously,

9    the numerous letters submitted by members of the

10   community.

11        I did not see any request for downward departure or

12   for variant sentence -- well, actually I take that back.

13   There was -- no there was not a motion for variant

14   sentence in this case.

15        I have reviewed, as I indicated, Document Nos. 20

16   and 21, the defendant's sentencing statement requesting

17   that I sentence the defendant to the 60 months of

18   imprisonment.

19        Based upon my review of this case, and after

20   consideration of the 3553(a) factors, my inclination is to

21   impose a sentence of 60 months and 3 years supervised

22   release on each count, both sentence and supervised

23   release to run concurrently.

24        With that being said, Mr. Harris, do you wish to

25   make any further argument or statement for the record?

 1          MR. HARRIS:  Only briefly, Your Honor.  In light of

 2     what the Court has indicated your inclination is, I won't

 3     merely repeat what was said in the sentencing statement,

 4     other than to note that notwithstanding what he did, and

 5     perhaps foreshadowing what he may say today,

 6     notwithstanding the tone of what he may say, because

 7     Mr. Bond is quite impassioned about what he believes, I do

 8     believe that the Court is correct that a 60-month sentence

 9     adequately addresses the concerns of Section 3553 and the

10     sentencing goals in general.  Thank you.

11          THE COURT:  All right.  Mr. Holloway, does the

12     Government wish to make any statement for the record?

13          MR. HOLLOWAY:  Yes, Your Honor.  If I may,

14     certainly this case revolves around the idea that the

15     defendant is motivated by his passion of animal rights

16     causes.  And the Government would make the obvious

17     observation; that to resort to violent crime is never an

18     answer.

19          And as imperfect as it may be, there is a process

20     in place, a mechanism in place in our country to bring

21     about or effectuate whatever change you may want.  And

22     that mechanism is critical, in that it exists to provide

23     for the freedoms of everybody.  And for the defendant to

24     step outside that and commit a violent crime is

25     unacceptable.

1        Similarly, we are here to look at the defendant,

2    himself.  And one thing that strikes me in looking at the

3    presentence investigation report is that it appears that

4    the defendant likes to light stuff on fire.  And his

5    crimes involving fire pre-date his passion for animal

6    rights.

7        As the Court undoubtedly noted in the pre-sentence

8    investigation report, paragraph 35, the defendant was

9    convicted of lighting a pentagram on fire inside a church.

10   Subsequently, paragraph 45 details the defendant's prior

11   conviction for arson in the second degree of a building,

12   in which a pet died when he committed that arson.

13       And while I have no doubt that he is motivated by

14   his passion for animal rights, it seems to me that we need

15   to be careful that it appears to be yet another, in a long

16   line of justifications, for his criminal activities.

17       And certainly I reviewed the same letters that the

18   Court got from multiple people who undoubtedly feel

19   strongly about animals.  And those letters go to great

20   details to try to explain to the Court that this defendant

21   has never done anything like this before, and is a

22   peaceful person.  But as well intentioned as those letters

23   may be, Your Honor, unfortunately, they're not made with

24   the full knowledge of the defendant's prior history, and

25   that's alarming to me.

1    It is alarming to me in that the defendant seems to

2    use arson as his mechanism for whatever cause he chooses

3    at that point in time.  I would implore the Court to think

4    about the victims in this case and the impact that it has

5    had on them.

6    Again, while people may disagree one way or another

7    with each other, it is never, ever acceptable to commit a

8    violent crime to effectuate that.  And the victims in this

9    case certainly did absolutely nothing to deserve the

10   ruination that the defendant attempted to bring to their

11   doing.

12   And their letter says it far more eloquently than I

13   ever could, and in that particular case, I believe the

14   defendant has earned his 5 years in federal prison, and I

15   would implore the Court, in terms of when it structures

16   supervised release, to structure that in the most onerous

17   way possible, so as to prevent the defendant from

18   committing any future crimes, because certainly law

19   enforcement will be ready if he chooses to do that.  And I

20   know this Court will be ready to address any of that type

21   of behavior quickly and protect the safety of the public.

22   Thank you.

23   THE COURT:  Thank you, Mr. Holloway.

24   All right.  In that regard, I do want to address

25   something.  Many of the letters that I read arguing on

1    behalf of Mr. Bond argued that he had not hurt anyone and,

2    therefore, this Court should grant leniency to him.

3    Fortunately, no one was physically injured in this fire,

4    but it is not correct to state that no one was hurt.  And

5    I think it is only right that I read into the record

6    excerpts from the letter that was submitted by the victim

7    of this fire.

8         "On April 30, 2010, Walter Bond successfully

9    executed his plan to torch my family business to the

10   ground.  That morning, my wife and I, along with our five

11   children and three grandchildren, stood in the pit of

12   water, which only hours before marked where we started our

13   business 30 years earlier.

14        We stood outside of our business, our second home,

15   and watched our livelihood engulfed in flames.  As the

16   last of the firefighters offered their condolences, we now

17   know Bond was only a few feet away taking pleasure in our

18   suffering.  We stared at the charred foundation and soot

19   and realized absolutely nothing was salvaged.

20        The fear and deep loss he forced upon my family is

21   with us forever.  Not only did he risk my family's

22   livelihood, but his actions also put hundreds of innocent

23   Glendale residents at risk, including the brave officers

24   and firefighters who reported to the scene.

25        It is not uncommon for us to work late into the

1    night, unloading trucks and preparing shipments for

2    clients.  I thank God every day one of my children was not

3    in there when he wreaked havoc on my family.

4           Aside from hundreds of thousands of dollars lost,

5    the flames engulfed one-of-a-kind and irreplaceable

6    specialty machines, which are essential to the production

7    of our family brand.  We lost patterns perfected and

8    created over 30 years time.  With a flick of a match, he

9    made it impossible for me to continue to provide for my

10   family.

11          Having no insurance, we truly lost everything.  And

12   yet, that morning, Walter Bond took something from us that

13   no amount of money could ever replace.  That morning, our

14   sense of safety and security went up in flames.

15          Now 30 years of the trials and tests my wife and I

16   already overcame in building a family business are

17   overshadowed by his failed attempt at heroism.  We had

18   started thinking of retirement, but he shattered that

19   dream, as we were forced to take our savings to revive our

20   family business for our children.  Walter Bond shows no

21   remorse for what he has done."

22          So people were hurt.  And there was the potential

23   for people to be hurt.  And I agree with Mr. Holloway, no

24   matter how noble you believe your cause is, violating the

25   rights of citizens of the United States is not to be

1    tolerated.  And violating the rights extends beyond

2    violating the person personally.

3         And I understand from the letters, we hold our

4    property rights to be important in this country.  And we

5    have laws established for how you go about making change

6    in society.  And our laws do not allow you to take the law

7    in your own hands.  You cannot be judge, jury and

8    executioner all as one.  That is vigilanteism, and that is

9    not something that this society should ever tolerate.

10        Mr. Bond, at this point, do you wish to make any

11   statement to Court on your own behalf.

12        THE DEFENDANT:  I do, Your Honor.  May I?

13        THE COURT:  Yes.  You may grab your notes.

14        And, Mr. Harris, if you could just kind of move to

15   the side.

16        MR. HARRIS:  Absolutely.

17        THE COURT:  Thank you.

18        THE DEFENDANT:  I would like to state first for the

19   record that in the presentence investigation, the

20   statement that a pet died in the last arson that I

21   committed was testimony by my brother, who is an

22   informant, not testimony of the court record.

23        I'm here today because I burnt down the Sheepskin

24   Factory in Glendale, Colorado, a business that sells

25   pelts, furs and other dead animal skins.  I know that many

1    people think that I should feel remorse for what I have

2    done.  I guess this is the customary time where I am

3    supposed to grovel and beg for mercy.

4         I assure you that if that is how I felt, I would.

5    But I'm not sorry for anything I have done, nor am I

6    frightened by this Court's authority, because any system

7    of law that values the rights of the oppressor over the

8    downtrodden is an unjust system.

9         And though this Court has real and actual power, I

10   question its morality.  I doubt the Court is interested in

11   the precautions I took to not harm any person or

12   bystander, and even less concerned with the miserable

13   lives that sheep, cow and mink had to endure, unto death,

14   so that a Colorado business could profit from their

15   confinement, enslavement and murder.

16        Obviously the owners and employees of the Sheepskin

17   Factory don't care either, or they would not be involved

18   in such a sinister and macabre blood trade.  So I will not

19   waste my breath where it will only fall on deaf ears.

20   That is why I turned to illegal direct action to begin

21   with, because you did not care.

22        No matter how much we animal rights activists talk

23   or reason with you, you don't care.  Well, Mr. Livaditis,

24   I don't care about you.  There is no common ground between

25   people like you and me.  I want you to know that no matter

1    what this Court sentences me to today, you have won

2    nothing.

3         Prison is no great hardship for me.  In a society

4    that values money over life, I consider it an honor to be

5    a prisoner of war; the war against interspecies slavery

6    and objectification.  I also want you to know that I will

7    never willingly pay you one dollar, not one.

8         I hope your business fails, and that you choke to

9    death on every penny that you profit from animal murder.

10   I hope you choke on it and burn in hell.

11        To my supporters, I wish to say thank you for

12   standing behind me and showing this Court and these animal

13   exploiters that we support our own, and that we, as a

14   movement, are not going to apologize for having a sense of

15   urgency.

16        We are not going to put the interests of commerce

17   over sentience.  And we will never stop educating,

18   agitating and confronting those responsible for the death

19   of our Mother Earth and her animal nation.

20        My vegan sisters and brothers, our lives are not

21   our own.  Selfishness is the way of gluttons, perverts and

22   purveyors of injustice.  It has been said that all it

23   takes for evil to conquer is for good people to do

24   nothing.

25        Conversely, all it takes to stop the enslavement,

1    use, abuse and murder of other than human animals is the

2    resolve to fight on their behalf.  Do what you can.  Do

3    what you must.  Be vegan warriors and true animal

4    defenders, and never compromise with their murderers and

5    profiteers.

6         The Animal Liberation Front is the answer.  Seldom

7    has there been such a personally powerful and

8    internationally effective movement in human history.  You

9    cannot join the ALF, but you can become the ALF.  And it

10   was the proudest and most powerful thing I have ever done.

11        When you leave this court today, don't be dismayed

12   by my incarceration.  All the ferocity and love in my

13   heart lives on.  Every time someone liberates an animal

14   and smashes their cage, it lives on.  Every time an

15   activist refuses to bow down to laws that protect murder,

16   it lives on.  And it lives on every time the night sky

17   lights up ablaze with the ruins of another animal

18   exploiter's business.

19        That is all, Your Honor.  I am ready to go to

20   prison.

21        THE COURT:  Please remain standing.

22        As a result of the United States Supreme Court

23   rulings in United States v. Booker and United States v.

24   Fanfan, the United States Sentencing Commission Guidelines

25   have become advisory to this Court.  The Court, while not

1   bound to apply those guidelines, has consulted them and

2   taken them into account along with the sentencing factors

3   identified at 18 United States Code Section 3553(a), which

4   indicate that this Court's sentence should reflect the

5   seriousness of the offense, promote respect for the law,

6   provide just punishment, adequately deter criminal

7   conduct, protect the public from further crimes, and to

8   provide the defendant with any needed educational or

9   vocational training, medical care or correctional

10  treatment in the most effective manner.

11        In fashioning a sentence that meets these criteria,

12  I have considered the nature and circumstances of this

13  offense, the history and characteristics of this

14  defendant, the kinds of sentences available, the sentence

15  recommended by the advisory guidelines, and the need to

16  avoid unwarranted sentencing disparities and the need for

17  restitution.

18        Neither the Government nor the defendant has filed

19  any objections to the presentence report, therefore, the

20  factual statements and guideline applications in the

21  report are adopted without objection as the Court's

22  findings of fact concerning sentencing.

23        The Court finds that the total offense level is 21,

24  and the defendant's criminal history category is III,

25  which results in an imprisonment range of 46 to 57 months.

1    However, because the mandatory minimum sentence as to

2    Count 1 is greater than the top of the applicable

3    guideline range, the statutorily required minimum sentence

4    becomes 60 months.  The fine range is $7,50 to $75,000,

5    and the supervised release range is 2 to 3 years.

6         The Court finds no reason to depart or vary from

7    the guideline range, which does not exceed 24 months, and

8    will impose the statutorily-required sentence.

9         Pursuant to the Sentencing Reform Act of 1984, it

10   is the Judgment of the Court that the defendant, Walter

11   Edmund Bond, is hereby committed to the custody of the

12   Bureau of Prisons to be imprisoned for a term of 60 months

13   on each of Counts 1 and 2, to be served concurrently.

14        Upon release from imprisonment, the defendant shall

15   be placed on supervised release for a term of 3 years as

16   to each of Counts 1 and 2, to run concurrently.  Within 72

17   hours of release from the custody of the Bureau of

18   Prisons, the defendant shall report in person to the

19   probation office in the district to which the defendant is

20   released.

21        While on supervised release, the defendant shall

22   not commit another federal, state or local crime; shall

23   not possess a firearm, as defined in 18 United States Code

24   Section 921; and shall comply with the standard conditions

25   that have been adopted by this Court.

1    Because this sentence does impose a restitution

2    requirement, it is a condition of supervision that the

3    defendant pay in accordance with the schedule of payment

4    sheet set forth in the Judgment.

5    The defendant shall not unlawfully possess a

6    controlled substance.  The defendant shall refrain from

7    any unlawful use of a controlled substance.  The defendant

8    shall submit to one drug test within 15 days of release on

9    supervised release and two periodic tests thereafter.  The

10   defendant shall cooperate in the collection of DNA as

11   directed by the probation officer.

12   In addition, the defendant shall comply with the

13   following special conditions:  First, the defendant shall

14   participate in and successfully complete a program of

15   mental health treatment to address anger management as

16   approved by the probation officer until such time as the

17   defendant is released from the program by the probation

18   officer.

19   The defendant shall pay the cost of treatment as

20   directed by the probation officer.  The Court authorizes

21   the probation officer to release to the treatment agency

22   all psychological reports and/or the presentence report

23   for continuity of treatment.

24   Second, the defendant shall not incur new credit

25   charges or open additional lines of credit without

1    approval of the probation officer unless the defendant is

2    in compliance with the periodic payment obligations

3    imposed pursuant to the Court's judgment and sentence.

4         Third, as directed by the probation officer, the

5    defendant shall apply any moneys received from income tax

6    refunds, lottery winnings, inheritances, judgments, and

7    any anticipated or unexpected financial gains to the

8    outstanding court-ordered financial obligation in this

9    case.

10        Fourth, within 60 days of release on supervised

11   release, the defendant shall meet with the probation

12   office to develop a plan for the payment of restitution.

13   The defendant shall document all income and compensation

14   generated or received from any source and provide such

15   information to the probation officer as requested.

16        The plan of payment will be based upon the

17   defendant's income and expenses, with the restitution

18   amount to be paid in monthly installment payments.  Such

19   monthly installment payments shall be at least 10 percent

20   of the defendant's gross monthly income.  The plan for

21   payment shall be reviewed with the probation officer

22   semi-annually.

23        Fifth, because this sentence imposes restitution,

24   it is a condition of supervision that the defendant pay in

25   accordance with the schedule of payment sheet.  The

1    defendant shall make restitution in the total amount of

2    $1,170,253.18 to the victims as follows:

3          Secura Insurance Companies, $186,032.50.  Authentic

4    Persian and Oriental Rugs, $250.  Luis Livaditis,

5    $500,000.  Travelers, $280,699.83.  MAK Investment Group,

6    $203,270.85.  Restitution is ordered to be directed to the

7    addresses provided to the Clerk of the Court by the

8    probation officer.

9          Disbursement of restitution payment shall be made

10   on a pro rata basis to the victims. Any disbursements

11   returned to the Clerk of the Court as unclaimed or

12   undeliverable shall be deposited into the Court's registry

13   and disbursed to the remaining victims on a pro rata

14   basis.

15         The Court has determined that the defendant does

16   not have the ability to pay interest, and it is ordered

17   that the interest requirement is waived for the

18   restitution.

19         The defendant shall pay a special assessment of

20   $200.  The Court finds that the defendant does not have

21   the ability to pay a fine, so the Court waives the fine in

22   this case.

23         Having assessed the defendant's ability to pay, it

24   is ordered that the payment of the monetary obligation

25   shall be due as follows:  The special assessment and

1     restitution obligations are due immediately.  Any unpaid

2     restitution balance upon release from incarceration shall

3     be paid in monthly installment payments during the term of

4     supervised release.

5          Now, Mr. Bond, I want you to know that I do take

6     very seriously my task of sentencing, because I know that

7     I have at least a portion of your life in my hands.  And I

8     want to be as fair as possible in meting out the justice

9     that is required for the crime that you have committed.

10         On the other hand, I have an obligation to the

11    public and to society to protect them from any further

12    crimes, to promote respect for the law, to provide just

13    punishment, and to adequately deter any future criminal

14    conduct by you and by others.

15         Now, I note that in 2002 and 2003, you attended

16    community college, where you earned a number of

17    certificates in blueprint reading and welding.  And during

18    your presentence interview, you indicated to the probation

19    officer that you committed this offense because you became

20    impatient with general activism, and you decided to take

21    the law into your owned hands.

22         I hope that you realize that by acting as judge,

23    jury and executioner, you are no better than the people

24    that you criticize.  Your stepfather reported that you

25    told him you will not commit arson again because it is out

1    of your system.  I hope that is true, but I'm not so sure,

2    because it does appear to me from your record that

3    whenever you get upset, the way you act out is to light

4    something on fire.

5         I also hope it is true, because it is apparent to

6    me that you are a very intelligent man.  And your

7    intelligence and abilities are being wasted by your

8    incarceration.  You indicated to the probation officer

9    that you want to write about animal rights on a full-time

10   basis when you are released.  I read your article, and I

11   was impressed, because you are a very good writer.

12        And I truly believe that the pen is mightier than

13   the sword, and that you would have a much greater impact

14   on your cause by devoting yourself to educating others

15   about these issues through your writings than you will

16   have by continuing your role as an arsonist.

17        I believe that a sentence of 60-months

18   imprisonment, which is the statutory mandatory minimum

19   sentence I can impose reflects the seriousness of the

20   instant offense and is sufficient but not greater than

21   necessary to achieve the purposes of sentencing as defined

22   at 18 United States Code Section 3553(a), which are to

23   protect the public from further offenses, to promote

24   respect for the law, to deter you from committing any

25   additional future criminal.

1        And I do want to emphasize for you, you made a

2   statement saying you will not pay your victims a penny.

3   You need to understand that part of your supervised

4   release is that you are going to have to pay them at least

5   10 percent of your gross income.  And if you violate that,

6   you are subjecting yourself to being brought back into

7   this Court for violation of your supervised release, and

8   you are facing additional time in prison.  And I just want

9   to make sure you understand that.

10        THE DEFENDANT:  I do.

11        THE COURT:  All right.  I did impose the maximum

12   term of supervised release to allow ample time for the

13   defendant to adequately address the special conditions

14   imposed by the Court and to give the defendant as much

15   time as possible to make the restitution payments.

16        Mr. Bond, you are advised that you have the right

17   to appeal this sentence.  If you desire to appeal, a

18   Notice of Appeal must be filed with this the Clerk of the

19   Court within 14 days after entry of Judgment or your right

20   to appeal will be lost.  If you cannot afford an attorney

21   for an appeal, I will appoint one to represent you free of

22   charge.  If you request, the Clerk of the Court must

23   immediately prepare and file a Notice of Appeal on your

24   behalf.

25        Counsel, is there any other business to be brought

1    before the Court?

2             MR. HOLLOWAY:  No, thank you, Your Honor.

3             MR. HARRIS:  No, Your Honor, thank you.

4             THE COURT:  All right.  The defendant is remanded

5    to the custody of the United States Marshal.

6             Court will be in recess.

7             (Proceedings conclude at 1:57 p.m.)

8

9             **R E P O R T E R ' S   C E R T I F I C A T E**

10

11            I, Darlene M. Martinez, Official Certified

12   shorthand Reporter for the United States District Court,

13   District of Colorado, do hereby certify that the foregoing

14   is a true and accurate transcript of the proceedings had

15   as taken stenographically by me at the time and place

16   aforementioned.

17

18            Dated this 11th day of March, 2011.

19

20

21            _____

22            s/Darlene M. Martinez

23            RMR, CRR

24

25